## DENSON *v.* KEYS *et al.*

1. Where a homestead was set apart to the head of a family, under the constitution of 1877, in land belonging to him, he could not, pending the existence of the homestead, make a valid conveyance of the land, without any order of court; and a deed so made was void, although made to one of the two beneficiaries as trustee for the other.

2. Under the pleadings and evidence, it was error to direct so much of the verdict as declared that the land in controversy belonged to the head of the family and his wife, with equal interests. But this can be corrected without reversing the whole judgment.

3. If certain evidence was of doubtful admissibility, its admission was not such as to injure the plaintiff, who had no title in any event, and the ruling will not require a reversal at her instance.

JUNE 13, 1913.

Equitable petition. Before Judge Fite. Catoosa superior court. April 4, 1912.

*Maddox, McCamy & Shumate* and *Foust & Payne,* for plaintiff. *W. E. Mann,* for defendants.

LUMPKIN, J. In 1893 J. M. Keys, as the head of a family consisting of his wife and daughter, had certain land belonging to him set apart as a homestead, under the constitution of 1877. In 1897, while the homestead was in force, he conveyed the land to his wife in trust for their daughter. In this deed it was recited that the husband had paid only half of the purchase-money with his own funds, and had used money of the wife in making payment of the balance. No order of court for any sale and reinvestment appears. In 1907 the wife executed a deed to the husband of the daughter, the latter having married in the meantime. In 1911 the daughter, who alleged herself to be still a minor and brought suit by her next friend, filed an equitable petition, alleging that the deed from her mother to her husband was made without any authority or consideration, and that her father, after making the trust deed, mutilated it by erasing the name of her mother therefrom and inserting his own. She prayed to have her father enjoined from interfering with the property, that it be declared to belong to her, and that the deed from her mother to her husband be canceled. It does not appear from the record that either the plaintiff's mother or husband filed any answer. The father filed an answer and cross-petition, in which he set up that the deed made by him to his wife in trust for their daughter was void, being made after the property had been set apart as a homestead and while such homestead was in force. He prayed that both deeds be canceled as clouds upon his title. On the trial the presiding judge directed a verdict canceling both deeds and declaring that Keys and his wife were joint owners of the property in dispute. The plaintiff moved for a new trial, which was refused, and she excepted.

1. It has been held that where a head of a family took a homestead in certain land, under the constitution of 1868, he could, without any order of court, make a deed which would operate as a valid conveyance to what was called, for want of a better name, "the reversionary interest," that is, his title to the land after the homestead should terminate. *Aiken* v. *Weldon,* 139 *Ga.* 15 (76 S. E. 359), and citations. After the adoption of the constitution

of 1877, it was held that its language was different from that of the former constitution, and worked a change in this respect. Hence it was declared that, under the latter constitution, the land could not be conveyed by the head of the family, pending the homestead, except by order of court, as prescribed in the statute; and that an effort to sell it did not result in a conveyance of the "reversionary interest," but was simply invalid. *Huntress* v. *Anderson,* 110 *Ga.* 427, 428 (35 S. E. 671, 78 Am. St. R. 105) ; *Clifton* v. *Northen,* 106 *Ga.* 21 (31 S. E. 782). In *Walker* v. *Hodges,* 113 *Ga.* 1042 (39 S. E. 480), the exemption under consideration was not the constitutional homestead, but the statutory one, colloquially termed the "pony homestead." In *Anderson* v. *Hall,* 114 *Ga.* 1016 (41 S. E. 593), the rule just stated as applicable under the constitution of 1877 was recognized, but was held not to apply to a conveyance by an heir of his interest, after the death of the head of the family.

The deed from Keys to his wife as trustee was made after the setting apart of a homestead under the constitution of 1877, and during the continuance thereof. While counsel for plaintiff in error argued in their brief that the head of the family had recognized the title as being in his daughter, by allowing her to pay taxes on the land after the termination of the homestead, there is no evidence in the record tending to show that it had terminated at the time of the trial, by reason of a divorce, except a vague, hearsay statement.

It will appear from the above that the presiding judge committed no error in the direction of a verdict to the extent of canceling the deed made by the head of the family to his wife as trustee for his daughter, and the one later made by the wife to the husband of the daughter.

2. The direction that the husband and wife should be declared to own a half interest each in the land was not authorized by the pleadings or the evidence. The daughter was the plaintiff. She claimed that the deed to her mother as her trustee had been altered by her father after it was made, and that the deed made by her mother to her husband was without authority. She prayed that her father be enjoined from interfering with the land, be ejected therefrom, and declared to have no rights therein; and that the deed made by her mother be canceled. So far as the record in this court shows, the father alone answered. He attacked the deeds as

void because they depended on an effort to convey land which had been set apart as a homestead under the constitution of 1877. He prayed that they be canceled. No answer or cross-petition of the wife appears. She did not set up any claim to any interest in the land, or pray any declaration of title or other relief. On the contrary, while in her testimony she stated that she had paid half of the purchase-money by means of her work in a dairy conducted by herself and her husband, she admitted having sought to get out of the family contention by conveying to her son-in-law after knowledge of a question as to the validity of the deed to her as trustee. She had brought suit against her husband for money, and dismissed it, as he testified without contradiction, upon payment to her of $300. While the deed made by her husband to her as trustee for the daughter recited that she had paid half of the purchase-money for the land, she could not have recovered both the land and the money; and she was not entitled to any decree in this case, under the state of the pleadings and the evidence. The finding in her favor is not consistent with the other finding. The plaintiff attacked the deed made by her mother, and complained also of the verdict as directed.

We accordingly direct that the verdict and judgment be so modified as to strike from them the declaration that Keys and his wife each own one half interest in the land.

3. Error was alleged on the admission in evidence of a former suit for money, brought by the wife against the husband, and its dismissal. The description of this suit in the record is very meager. But we infer that she sued him to recover money in lieu of the land, thus electing not to claim title to the land as an implied trust. If so, and there had been an assertion of such a trust, it would have been admissible to show an inconsistent claim. At any rate, whatever ruling might be made as to this evidence, it could not give the plaintiff a good title. Nor does the ruling furnish any ground for a reversal at her instance.

*Judgment affirmed, with direction. All the Justices concur.*