In re Janice B. MEDLOCK, Debtor.

Gregory K. Crews, as Chapter 7 Trustee, Plaintiff,

v.

Barbara Burch Wright, Bobby Burch, Jr., Veronica Burch, Robert and Twilla Burch Parker, Cynthia McGuire Moore and Brenda Burch, Defendants.

Bankruptcy No. 00–09073–3F7.
Adversary No. 01–49.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 16, 2001.

Robert Zipperer, Daytona Beach, FL, for debtor.

Gregory K. Crews, Jacksonville, FL, Chapter 7 Trustee.

Raymond R. Magley, Denise E. Barnett, Smith, Hulsey & Busey, Jacksonville, FL, for plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon the complaint of Gregory K. Crews, the Chapter 7 Trustee of Debtor's estate, ("Plaintiff") seeking to recover real property transferred to Barbara Burch Wright, Debtor's sister, Bobby Burch, Jr., Debtor's brother, Veronica Burch, Debtor's sister, Robert and Twilla Burch Parker, Debtor's sister and brother-in-law, Cynthia McGuire Moore, Debtor's niece, and Brenda Burch, Debtor's sister-in-law (collectively "Defendants") pursuant to 11 U.S.C. §§ 548, 549 and 550. The Court conducted a trial on August 7, 2001.

Debtor's mother, Murtice Williams Burch ("Mrs. Burch") testified that in 1985 she learned of the availability of undeveloped real property in Baxley, Georgia for $500.00 per acre. Mrs. Burch testified she contacted her children to inquire whether they wanted to purchase any of the property. According to Mrs. Burch, Debtor and Defendants responded affirmatively. Mrs. Burch testified she purchased one 10–12 acre parcel of property.[1] Debtor,

---

1. Defendants' proposed Findings of Fact and Conclusions of Law indicates Mrs. Burch pur-

Defendants, and Mrs. Burch testified the purchase was on behalf of and funded by Debtor and Defendants, each contributing $500.00 per acre for their portion.[2] Although Defendants contend that a warranty deed transferring the property to Mrs. Burch was issued, they did not offer it into evidence. Additionally, Defendants did not offer documentary evidence such as receipts or cancelled checks showing that they provided the money to Mrs. Burch to purchase the property on their behalf.

Defendants testified that after the date of the purchase each family member paid his or her portion of the property taxes and other expenses that arose in connection with the property. However, Defendants presented no documentary evidence of any such contributions.

Debtor testified that Mrs. Burch transferred the property to her in 1997. According to Debtor, each year Defendants sent her the money for their proportional share of the property taxes, which she then forwarded to the tax collector. Defendants presented receipts that purportedly represent the payments they made to Debtor for the property taxes. (Defs.' Ex. 1.) However, Debtor admitted she created the receipts a few months before the trial of this adversary proceeding. Defendants also introduced a check stub for $50 dated October 7, 1996 from Defendant Bobby Burch to Debtor. (Defs.' Ex. 2.) The purpose of the $50 is not stated on the check.

In lieu of closing argument the Court instructed the parties to submit memoranda of law, proposed findings of facts and conclusions of law, and proposed judgments. Upon review of the evidence presented and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On October 23, 2000 a survey of the property was completed and the property was platted into 1 to 3 acre lots. (Pl.'s Ex. 2.) Between October 30, 2001 and November 2, 2001 Debtor executed warranty deeds of the surveyed property to Defendants as follows: 2 acres to Barbara Burch Wright, 3 acres to Bobby Burch, Jr.,[3] 1 acre to Veronica Burch, 1 acre to Robert and Twill Burch Parker, 1 acre to Cynthia McGuire Moore, and 1 acre to Brenda Burch. (Pl.'s Ex. 1.) The deeds transferring the real property to Defendants recited the consideration for each tract of land as a "gift." (Id.)

On November 22, 2000 Debtor filed a petition under Chapter 7 of the Bankruptcy Code. (Doc. 1.) Plaintiff was appointed Chapter 7 Trustee.

On Schedule A of her petition, Debtor indicated she owned a 1/7 interest in 12 undeveloped acres in Baxley, Georgia. On her Statement of Affairs, Debtor indicated she had not transferred any property within one year prior to the filing of the petition.

On December 6, 2000 the warranty deeds were recorded in the Official Records of Appling County, Georgia. (Pl.'s Ex. 1.)

On February 7, 2001, Plaintiff filed this adversary proceeding against Defendants

---

chased one 9 acre parcel of property.

**2.** The purported purchases were as follows: Debtor–2 acres, Barbara Burch Wright–2 acres, Bobby Burch, Jr.–1 acre, Veronica Burch–1 acre, Robert and Twilla Burch Parker–1 acre, Linda McGuire, the mother of

Defendant Cynthia McGuire Moore–1 acre, and Brenda Burch–1 acre.

**3.** Debtor concedes that 2 of the 3 acres transferred to Bobby Burch, Jr. represent Debtor's proportional interest in the property and are thus property of the bankruptcy estate.

seeking relief pursuant to 11 U.S.C. §§ 548, 549 and 550 (2001). Defendants answered the complaint asserting as affirmative defenses that: (i) the real property is not property of Debtor's bankruptcy estate; and (ii) the real property was owned in a resulting trust with ownership interest in Defendants separately.

### CONCLUSIONS OF LAW

■ At trial the Court concluded that the Trustee proved either a fraudulent transfer pursuant to § 548 or a post-petition transfer pursuant to § 549.

■ The delivery of a deed conveys title to the grantee. *See Jones v. Phillips,* 227 Ga.App. 94, 488 S.E.2d 692, 694 (1997). Furthermore, the recording of a deed is prima facie evidence of its delivery. Mays v. Fletcher, 137 Ga. 27, 72 S.E. 408, 409 (1911). Therefore, the transfer of Debtor's interest in the real property, the delivery of the deeds, occurred sometime between the date the deeds were executed and the date they were recorded. If Debtor delivered the deed prior to the filing of the petition, the transfer of the real property is a fraudulent transfer pursuant to § 548. Debtor received nothing in exchange for the conveyance of the real property, clearly less than a reasonably equivalent value. Additionally, it is clear that Debtor was insolvent when she executed the deeds, some 3 weeks prior to the filing of the petition. If the deeds were delivered after the filing of the petition, the transfer of the property was an unauthorized post-petition transfer pursuant to § 549. The only remaining issue is whether the real property transferred was an interest of Debtor in property or property of the estate.

■ The bankruptcy estate consists of all legal and equitable interests of the Debtor. 11 U.S.C. § 541(a)(1)(2001). Federal law governs what is property of the estate, but state law determines the nature of the Debtor's property interest. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280, 1283 (11th Cir. 1998). Because the real property is located in Georgia, the Court must look to Georgia law to determine the nature of Debtor's interest.

Defendants argue that the real property is not property of Debtor's bankruptcy estate because it was held in a purchase money resulting trust for the benefit of Defendants. Plaintiff argues that Defendants' uncorroborated testimony that they provided Mrs. Burch $500.00 per acre to purchase the property is insufficient to establish a purchase money resulting trust.

■ Under the Georgia Trust Act, a purchase money resulting trust may be implied when legal title is in one person, but the beneficial interest is wholly or partially in another person as a result of payment of the purchase money.[4] *Ellenberg v. Bouldin (In re Bouldin),* 196 B.R. 202, 208 (Bankr.N.D.Ga.1996).

Section 53–12–91 of the Georgia Trust Act defines a resulting trust as follows:

A resulting trust is a trust implied for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property, under any of the following circumstances:

(1) A trust is created but fails, in whole or in part for any reason;

(2) A trust is fully performed without exhausting all the trust property; or

4. Settlor (paying consideration) → Trustee (holding title) → Beneficiary (settlor)

(3) **A purchase money resulting trust as defined in subsection (a) of code Section 53–12–92 is established.**

Ga.Code Ann. § 53–12–91 (2000) (emphasis added).

Section 53–12–92 of the Georgia Trust Act defines a purchase money resulting trust as follows:

(a) A purchase money resulting trust is a resulting trust implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property.

(b) Except as provided in subsection (c) of this Code section, such payment of consideration shall create a presumption in favor of a resulting trust, but this presumption is rebuttable by a preponderance of the evidence.

(c) If the payor of consideration and transferee of the property are husband and wife, parent and child, or siblings, a gift shall be presumed, but this presumption is rebuttable by **clear and convincing** evidence.

Ga.Code Ann. § 53–12–92(c) (2000) (emphasis added).

Ga.Code Ann. § 53–12–92 (2001).

### *Proof required to establish the existence of a purchase money resulting trust*

The burden of proving the existence of a resulting trust is on the party claiming to be the beneficiary of such a trust. *Freeman v. Saxton*, 243 Ga. 571, 255 S.E.2d 28, 30 (1979). First, a party claiming to be the beneficiary of a resulting trust must prove that he or she provided the purchase money. Secondly, a purported beneficiary who is the husband, wife, parent, child, or sibling of the transferee of the property must prove by clear and convincing evidence that the payment of the purchase money was not a gift. In order to rebut the presumption of a gift, one must show that such a trust was contemplated by both parties by way of an agreement that is either express or implied by the circumstances or conduct of the parties, and such an agreement must have existed at the time the transaction was consummated. *Burt v. Skrzyniarz*, 272 Ga. 35, 526 S.E.2d 848 (2000). Although the agreement itself must have existed at the time the transaction was consummated, subsequent conduct may be examined to determine that such an agreement existed. "The conduct of the payor and of the transferee subsequent to the transfer, however, may be such as to show that at the time of the transfer the payor did not intend to make a gift to the transferee. Thus, the fact that the payor manages the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, and the acquiescence by the transferee in such assertion of ownership, is evidence to rebut the inference of an intention by the payor to make a gift to the transferee." Restatement (Second) of Trusts § 443 cmt. a (1957). As to all other payors of consideration, there is a presumption in favor of a resulting trust, rebuttable by a preponderance of the evidence.

### *Application of law to the facts of the instant case*

In order to accept Defendants' argument that the property was held for their benefit in a purchase money resulting trust, the Court must first find that Defendants paid the purchase money. Defendants point out that the testimony by Defendants, Mrs. Burch, and Debtor that Defendants provided the purchase money is undisputed. However, Plaintiff does not

have the burden of proving that Defendants did not pay the purchase money; Defendants have the burden of proving they did. The testimony offered by Defendants, uncorroborated by any documentary evidence whatsoever, is simply insufficient to warrant a finding that they provided the purchase money. Additionally, Debtor's testimony is completely undermined by the fact that she indicated on her Statement of Financial Affairs that she had not transferred any property within one year prior to the filing of the petition when she had in fact deeded the 2 acres representing her portion of the real property to Bobby Burch, Jr. only 3 weeks prior to the filing of the petition. Such inconsistency raises the specter of suspicion. Finally, the recitation of consideration on the deeds transferring the real property from Debtor to defendants as a "gift" is inconsistent with Defendants having paid the purchase money.

An additional omission, perhaps the most telling and troubling of all, is Defendants' failure to produce a shred of documentary evidence to corroborate the testimony that the property was initially titled in Mrs. Burch's name. Defendants failed to produce a copy of the deed transferring the property to Mrs. Burch or a copy of the deed transferring the property from Mrs. Burch to Debtor.

Having found that Defendants failed to prove that they provided the purchase money for the real property or that the real property was ever titled in Mrs. Burch's name, the Court need not address the remaining elements of proof.

### CONCLUSION

Defendants failed to establish that the real property was held in a resulting trust for their benefit because they failed to prove that they paid the purchase price or that the property was ever titled in Mrs. Burch's name. Because Defendants had no beneficial interest in the real property, Debtor or her estate held the real property in fee simple title when she transferred it. Accordingly, the delivery of the warranty deeds transferring the property to Defendants is either a fraudulent transfer pursuant to 11 U.S.C. § 548 or an unauthorized post-petition transfer pursuant to 11 U.S.C. § 549 and is subject to turnover to Plaintiff pursuant to 11 U.S.C. § 550. The Court will enter a separate Judgment in accordance with these Findings of Fact and Conclusions of Law.